Johnson, J.
The dates, and some other circumstances connected with this case, have, in the multifarious proceedings which have been had in it, been involved in some confusion ; and an analysis of them will therefore be necessary to convey a correct idea of the view which the Court have taken of it.
Charles Freer died in 1809, and by his will appointed William Blacklock his executor, who qualified, and took upon himself the burthen of its execution. The complainant was in the employment of Freer, as an overseer, at the time of his death, at the annual wages of $400; and, under a contract with Blacklock, the executor, he continued in the same employment until the latter part *313 of the year 1815, for which period he claimed the saiiie wages'. Blacklock died in February, 1616, having appointed the defendant,Robertson, his executor ; and in June, 1816, the defendant, Wilson, was appointed administrator, de lonis ñon, of the estate of Freer, In the latter part of this year the complainant brought an action at law against Wilson, as administrator of Freer, in which he declared for wages due him in the life time of Freer, and also upon the contract with the executor, Blacklock; but being advised on the trial* in November, 1821, that he could not, in that form of action, recover on the latter, he discontinued as to that demand, and took hté judgment for the amount due him on the Contract with Freer.
In April, 1822, the complainant filed the present bill, in which' he charges, that there is yet due to him, on the contract with Black-lock, the sum of $1,200 ; that Blacklock was, at the time of hid death, in advance for the estate of Freer, to a large amount, to which his executor, Robertson, was intitled ; and that he had-frequently applied to the said Robertson, for the payment of this demand, who declined to pay it, on the ground, that he had no assets' of the estate of Blacklock in his hands: and the prayer of the bill is, that the said Robertson shall discover, and admit assets in his hands, to pay the amount, or that complainant should stand in the place of the said Robertson, and receive payment from the estate of the said Charles Freer, through his administrator, the defendant, John H. Wilson.
At May term, 1826, the cause came on for trial, before Chancellor De Saussure, when, an objection was raised, that the complainant’s remedy was at law, and that the estate of Freer was not, in any event, liable on the contract with the executor. This objection was overruled, and a reference was ordered, to ascertain the state of the accounts between Blacklock, the executor, and the estate of Freer.
The defendant, Robertson, has never yet put in any answer to the bill; but the master reported that from the returns of Black-lock, filed in the ordinary’s office, up to the 31st December, 1812, it appears that Blacklock was, at that time, in advance for the estate, $12,845.07. He has not, however, reported any account of his receipts, and disbursements, from that time, up to Blacklcck’s death, in 1815 ; although from the returns made, it appears, that the annual income, arising from the sales of crops, was from-$5,000, to upwards of $7,000 : so that it is apparent, that the accounts are imperfect, and incomplete. The master, nevertheless, recommends that the complainant’s demand, which he ascertains to- *314 amount to $891.31, should be paid by the defendant, Wilson, out of the estate of Freer.
In this state of things, the case came on for hearing, before Chancellor Thompson, at the last January term, upon exceptions to the master’s report. At the hearing before Chancellor Be Saussuke, the defendant, Robertson, had been called by the complainant, and sworn as a witness ; and the facts, then stated by him, were now used as evidence. He stated, that the estate of Black, lock was utterly insolvent; the whole having been swallowed up in a debt due to the United States : and that he had no knowledge of the state of the accounts between Blacklock and the estate of Freer, except what was exhibited by his books; but what they exhibit, does not appear. He also stated, and admitted, that the sum reported by the master, was justly due to the complainant, on the contract with Blacklock, and that it was unpaid. Under these circumstances, the Chancellor confirmed the master’s report, and decreed, that the defendant, Wilson, should pay to complainant, the amount of his demand, out of the amount of the advances made by Blacklock, on account of the estate of Freer; and that in the settlement of his accounts with the estate, that amount should be allowed him.
From this decree, an appeal has been brought up ; the grounds of which may be comprised in the following propositions. 1. That William Robertson, one of the defendants, was not a competent witness for the complainant. 2. That the complainant’s demand is barred by the statute of limitations; 3. That the circumstances of the case do not justify the decree against the estate of Freer.
1. The admissibility of Robertson, was not, it is said, objected to in the Circuit Court; and the objection, therefore, comes too late now'. I incline to think, however, that he was admissible on principle, at least so far as it regards the statute of limitations ; that being, as I shall hereafter have occasion to shew, a matter exclusively between himself and the complainant. His admission, that the demand was still due, and unpaid, could only operate against the estate which he represented ; and his declarations to that effect, out of Court, would have been evidence: and there can be no reason why, if he thought proper to make them in Court, under the solemnity of an oath, they should not be received. See Norden v. Williamson, and Twibill, 1 Taunt. 378, Miller v. Starks, 13 Johns. 517.
2. It is agreed, on all sides, that the present demand, ,as against Blacklock, was not barred by the statute, at the time of his death, *315 in 1816 ; and although the time intervening between that period, and the commencement of the present suit, would have operated as a bar under the statute, the acknowledgment of his executor, Robertson, made as late as the trial before Chancellor De Sausstjre, in 1826, which was full and unequivocal, takes it out of the statute. Pearce v. Zimmerman, Harper’s Law Rep. 305. So that, as between the immediate parties to the contract, the statute cannot operate.
The defendant, Wilson, the administrator, de bonis non, of Freer, whom the complainant now seeks to charge, claims the benefit of the statute, and denies to Robertson the power to bind him, or the authority to compromit his rights. But this objection is, I think, founded on a misconception of the nature, and foundation, of the complainant’s claim upon him. His legal demand is against ,the estate of Blacklock ; but being, as he alleges, unable to obtain satisfaction from that source, he asks, on the grounds of equity stated in his bill, that he should be put in the place of Blacklock, or, more technically, that he should be subrogated to his rights.
In the investigation of such a demand, the first inquiry would be, as to the rights of complainant against Blacklock. In this inquiry, the defendant, Wilson, or the estate which he represents, can have no interest; for whether any thing was due, or not, or whether the complainant had, or had not, the right to be subrogated, can in no way affect his liability. If he were indebted, it could make no manner of difference, whether he paid to the one, or the other ; and these proceedings could not, by any possibility, raise a debt, when none existed before.
Let us suppose, by way of illustration, that the complainant’s right to be put in the situation of Robertson, as executor of Black-lock, was, upon the well known principles of equity, free from all doubt; and that Robertson had admitted the debt to be justly due : would the defendant, Wilson, be permitted to say, that this demand was on a simple contract of ten years standing, and barred by the statute of limitations ; and I am, therefore, discharged from my liability to the estate of Blacklock ? Certainly not. And yet this is the case now before us.
The subrogation of one to the rights of another, which is frequently resorted to in Courts of Equity, for the purpose of doing ample, and summary justice, clothes him with all the powers, and subjects him to all the disabilities, of that other, in relation to the matter in controversy. He can have no rights, nor can his adversary have any advantages over him, which did not attach to the per *316 son w^om ^le represents. They must, for the occasion, be comPletely identified. Now, as between Biacklock, and the estate of Freer, it is not pretended that the statute would operate. He stood ^le relation of executor to that estate, in which it is agreed, on all sides, that the statute would not be a protection, and, consequently, cannot be used against him, if, in truth, he is in advance for the estate. In any possible view of the case, the statute cannot, therefore, operate as a bar to the complainant’s demand.
3d. The third, and only remaining proposition, has been placed by the argument in a double aspect: 1st, on the assumption, that the estate of Freer wa.s indebted to Biacklock, the executor, for advances ; and 2dly, on the supposition, that the estate was not so indebted : and it is contended, on behalf of the complainant, that in either case, the estate was liable for this demand, if the estate of Biacklock is insolvent, and unable to pay it, which is assumed to be proved,
Admitting the truth of the facts assumed, that the estate of Freer was indebted to Biacklock, and that he was insolvent; and taking it for granted, as has been done throughout the case, that the services of the complainant, under the contract with Biacklock, were meritorious, and for the benefit of the estate ; the conclusion drawn, is, I think, fully sustained by the authorities. The cases of Cater v. Eveleigh, 4 Desaus. 19, and James v. Mayrant, Ib. 591, proceed on that principle; which is fully recognized by the Court, in the matter of Bloomfield and Wife v. Sundry Creditors, decided at the last January term : and it is supported by the high authority of .Chief Justice Marshall, in Riddle v. Mandeville, 5 Cranch, 329, cited at the bar. In that case, the defendant, who was the payee of a promissory note, had indorsed it, and put it into circulation ; and after having passed through several hands, the plaintiff finally got possession of it. The maker proved insolvent, and the plaintiff pursued his immediate indorser also to insolvency : but it seems, that by the laws of Virginia, where these things happened, he had no legal remedy against any previous indorser, but that each in his turn, had a right to sue his immediate indorser ; so that, ultimately, the defendant would have been liable. And in granting the relief prayed in that case, Judge Marshall lays down the rule broadly, that equity will make that party responsible, on whom the burthen must ultimately fall.
If, as this view of the subject supposes, the estate of Freer was indebted to Biacklock, there is no doubt, but that it was bound to *317 account, and would be ultimately liable, for this demand, and according to the rule, would be immediately so.“
But it is denied, that there is sufficient evidence, either of the in. debtedness of Freer’s estate, to Blacklock, or that his estate is insolvent; and for reasons that appear to me unanswerable.
The returns to the ordinary’s office, bring up Blacklock’s accounts with the estate of Freer, only to the end of the year 1812, and these, it is true, shew a balance in his favour: but it is equally true, that for three years after, he was in possession of the estate, which had before brought in an income of from $5,000, to $7,000, of which there is no account; and it will scarcely be credited, that there were neither receipts, nor disbursements, during that period. And although the Court cannot now determine, whether the estate is in arrear, or not, we cannot shut our eyes to the fact, that the whole truth has not come to view. It was the duty of the defendant, Robertson, to render that account; and that was the matter referred to the master, by the decree of Chancellor De Saessure. It was in the power of the complainant, to have compelled the production of this account, and until it is produced, the Court will not undertake to determine the question, on this partial view of the evidence, when more ample is attainable.
In relation to the insolvency of fife estate of Blacklock, it is true, that the executor, Robertson, stated, that it was swallowed up by a debt due to the United States, and is utterly insolvent. But by taking that as evidence, the right is conceded to Robertson, to determine, for the Court, of what the estate consisted, and whether the United States, or’any one else, had any demand against it, or were intitled to a precedence. But these are powers not vested in him by law. They are reserved to the Court, and when he shall have accounted in the usual mode, the Court will be able to determine these matters.
We come now to consider the alternative of the proposition, viz: whether the complainant is intitled to recover against the estate of Freer, supposing the estate not to be indebted to Blacklock, and that he died insolvent.
The contract was entered into with Blacklock, and the law imposed on him the obligation to pay the complainant his wages. He had no authority to bind any one else. Upon what principle is it, then, that the complainant calls on the legatees under the will of Freer, through the administrator, de bonis non, to contribute to discharge it ? It is said, that these services were rendered to the estate, to which they are intitled. But if they were rendered on the *318 resP°nsibiIity °f Blacklock, and he has reaped the fruits, how is the estate benefited, and where is the equity of subjecting them to the liability ? The claim of the complainant is well established, by the cases before referred to, to be one of pure equity ; and to intitle him to recover, he was bound to show, that the estate of Freer received a benefit from it.
The complainant, it is true, was employed on the plantation, and had the management of the negroes belonging to the estate; and it is said, and believed, that he managed it discreetly, and profitably, and rendered it productive: but if Blacklock has wasted the proceeds, the estate is no more benefited, than if the whole resources of the estate had been employed in sinking a pit,- with a view to ascertain the centre of gravity. And I can scarcely persuade myself, that the zeal of the counsel would carry them so far, as to con. tend, that the estate would be bound to pay the wages of the complainant, in the pursuit of so unprofitable, and visionary a project. I come, therefore, to the conclusion, that the right of the complain, ant to recover against Wilson, the administrator, de bonis non, must .depend on the circumstances, that Blacklock was in advance for the estate of Freer, and that his estate is-insolvent; neither of which are proved.
I was myself strongly induftpd to the opinion, that, under these circumstances, the bill ought to have been dismissed, for want of sufficient proof; but on more reflection, and on being fully satisfied, that the complainant’s claim is meritorious, I am disposed to give him another opportunity of establishing these facts, by referring it again to the Circuit Court, to enable the complainant to-ascertain the state of the accounts, between Blacklock and the estate of Freer, and the solvency, or insolvency, of Blacklock’s estate : and it is accordingly so ordered and decreed.
A suggestion, which was thrown out by one of the counsel for the defendant, deserves to be noticed. It is, that the complainant’s claim against Blacklock, was purely legal, and that he was. bound first to establish it at law, before he asked the aid of the Court of Equity, to enforce it against the estate of Freer. In the cases of Cater v. Eveleigh, James v. Mayrant, and Riddle v. Mandeville, (supra,) that course had been pursued, and the process of law had been exhausted to obtain redress of the parties primarily liable: and it is worthy of consideration, whether the Court of Equity would, ordinarily, take cognizance of a cause of this sort, until the right of the creditor, and the insolvency of the debtor, had been ascertained in that way; the only mode perhaps- in which, in some *319 cases, these facts could be fully ascertained. But this case has been already tried before the Circuit Court, and this objection is now started for the first time, and that too by way of a side blow ; and if it should appear, that there is any thing in it, I am not disposed to turn the complainant round to a new course of litigation, if he can establish the facts, in the way proposed, as I think he may : and the objection is only now noticed, to reserve the question, when it shall come before the Court at a proper time, and under other circumstances.
Nott, J., and Colcock, J., concurred.
A reference was ordered pursuant to this decree ; and at February term, 1829, the .cause came on for hearing, before Harper, Chancellor, upon exceptions to the master’s report, which will be sufficiently undérstood from the decree.
Harper, Ch.
This cause has been before tried, and was sent back from the Court of Appeals, to ascertain the state of the accounts between Blacklock and the estate of Freer, and the solvency, or insolvency, of Blacklock’s estate. It has been referred to the master, who reports, that there was a considerable balance due from the estate of Freer, to the executor, Blacklock, at the time of his death, amounting to about $5,982.02; and that the estate of Blacklock is utterly insolvent. So far as respects the insolvency of Blacklock’s estate, no exception has been taken to the report; but in relation to the. accounts between Blacklock, and the estate of Freer, the following exceptions have been filed.
1. That the accounts certified by the ordinary, were not admis. sible as evidence of the disbursements, against creditors.
2. That, under the decree of the Court of Appeals, the executor of Blacklock was bound to have furnished a full, and fair account, with Freer’s estate, to the time of Blacklock’s death, on oath.
3. That the statements of the annual income, as imperfectly furnished, were falsified by the defendant’s evidence ; so that no reliance could be placed upon those statements.
4. That the books offered in evidence, were irregular, and not such as were competent evidence, conceding that the items were to bé regarded as furnished by Blacklock.
5. That upon a comparison, and analysis of the evidence before the master, a full account of Freer’s estate has not been taken.
6. That the accounts furnished, and statements made, are imperfect, and not such as were required by the decree, to shew the indebtedness between the estates.
I do not consider the matter of the first exception to be before *320 me' ^le acc°unts of Blacklock with the estate of Freer, which? were passed before the ordinary, from the commencement of his administration, in 1809, until the end of 1812, were in evidence on l^e former reference; and no exception was then taken to them. The appeal was on other grounds ; and the Court of Appeals' has sent the case back, on the specific ground, that there was a period of Blacklock’s administration, from the end of 1812, to his death, in the beginning of 1816, for which no account was taken. If testimony had been offered to invalidate the accounts, or to disprove any particulars of them, that would have made a different question, I think the defendants were at liberty to give such evidence, but none such was offered. The accounts seem, on the face of them, perfectly fair, and regular; .and I do not conceive the question of their admissibility as evidence to be now open.
The second exception, I understand to apply to the form of the account, and to its not being rendered on'oath; whether it be a “ full and fair” account, is the matter to be tried. It seems to me, sufficiently formal. It is rendered, to be sure, in a book, which also-contains a variety of other matters ; but I am not aware that this constitutes an objection to its form. Such an account ought certain, ly to be sworn to. In general, an account forms part of the answer, and is sworn to along with it. The account in this case was new matter, not included in the answer. But Robertson, the executor of Blacklock, was sworn, as a witness, on the reference before the master, and the other defendant was at liberty to examine him as to any particulars of the account. This seems to me to be swearing to the account; and, indeed, in a mode more advantageous to the other defendant, than a formal authentification of it, by annexing an affidavit. In this case, the affidavit was less material, as the account was rendered by the executor of an executor, who had no personal knowledge of the transactions, and could only swear to his knowledge, and belief. On his examination, lie explained the sources, from which he derived the materials to make up the account.
The remaining exceptions, I shall consider together. As explained in the argument, I understand them to mean, that the income of the estate arising from the sale of crops, had not been fully accounted for. No exception was taken to any of the charges for disbursements, made by the executor, on account of the estate, which, I understand, were properly vouched. The objection is to the credits; the charges made by the executor, against himself. It was said, that no credit ought to be given to this side of the account; and that from inspection of the account, as well as from the *321 testimony given on the reference, it appears, that more was received than is accounted for: and as the excess cannot certainly be ascertained, the counsel seemed to think, that the Court should forbear to conclude, that there was any balance in the executor’s favor, or to give a decree for any apparent balance. I suppose that credit may fairly be given to the charges which the executor makes against himself. It can hardly be contended, that they are not sufficient evidence of the executor’s having received, what he states himself to have received. If by not, giving credit to that side of the account, be meant, that it is not fo be regarded, conclusively, as a full account, the position is correct. It is not so regarded. If an executor, or any other person, rendering an account, fail to give proper credits, the other party is at liberty to supply the deficiency by proof. An executor, suing to be reimbursed for advances, will be required to exhibit his accounts; and I can very well conceive, that if they should appear to be defective, wilfully, or through fraud, the Court would order him to account further, or to answer on interrogatories, and forbear to make any decree in his favor, until he should do so. If the accounts, from any cause, 'appear to be defective, or erroneous, the Court will scrutinize them with rigour, and make all just presumptions against the executor; or, if there be any deficiency, which he is able to supply, the Court will order him to supply it. In this case, however, I am satisfied, that it would be useless to order any further account. I see not the slightest reason to believe, that the executor of Blacklock has not rendered as full, and fair an account, as it was in his power to render. In effect, by submitting to examination, before the master, he has answered on interrogatories. If the original executor, Black-lock, were living, he, perhaps, might make a more satisfactory account ; but we have not this resource, and I must decide, as well as I can, from the evidence before me.
The account is concluded to be defective, in respect to giving proper credits, first, from the testimony of the complainant, Henshaw, which was used by the administrator, de bonis non, of Freer; and, secondly, from the internal evidence of the accounts themselves. It may be observed, that if we take the testimony of Henshaw, alone, as evidence of the account of the crops, there is still a considerable balance due to thé estate of Blacklock, and the administrator of Freer, cannot complain, it would seem, if we rely exclusively on the evidence produced by himself. I do not understand that there is any objection to the account of the proceeds of the crops, so far as it was rendered by Blacklock, himself, and passed *322 kef°re the ordinary. The exception is to the subsequent account, rendered by the executor of Blacklock. This includes the crop of 1812, which must have been disposed of chiefly in 1813; that of l®13j that of 1814; and part of that of 1815, which was sold in January, 1816, just before Blacklock’s death. According to the statement of Henshaw, the aggregate of these was 967 barrels of rice, and 19 bales of cotton. As the master reports, there is accounted for, of the crops of these years, 871 barrels of rice, and 11 bales cotton; leaving a deficiency of 96 barrels of rice, and 8 bales of cotton. I make the rice accounted for to amount to 923 barrels. The difference is occasioned, by my applying four credits in Blacklock’s account, passed before the ordinary, for rice sold in November, and December, 1812, amounting to 52 barrels, to the account of the crop of 1812. From the season at which they were sold, they were in all probability part of the crop of that year. This makes a deficiency of 44 barrels of rice, and at the price assumed by the master, would amount to $830. This, and the amount of the 8 bales of cotton, $490.08, deducted from $5,982.02, the balance made by the executor’s account, would leave a balance of $4,661.94, due to the estate of Blacklock. It is true, that there is considerable difficuty in making the account correspond with Henshaw’s statement. In some years, considerably less is credited, than he makes the crop amount to; in others, more. This may perhaps be accounted for, by supposing part of the crop to have been left on hand, from one year to the next. For the years, for which Blacklock returned the accounts to the ordinary, somewhat more is accounted for, than the amount of Henshaw’s statement, excluding the four credits on the last of 1812, which I have applied to the crop of that year. The account, however, nearly corresponds with the statement, and serves to corroborate it.
The argument against the account, from internal evidence, is, that for the year 1812, and subsequently, after Blacklock ceased to account before the ordinary, the crops accounted for appear to have been smaller than in the previous years. This might be a ground of suspicion, but is not conclusive of any thing unfair. According to Henshaw’s testimony, the crops of the latter years appear to have been smaller. But if we were to take the average of the crops of 1808, 1809, 1810, and 1811, and charge an equal amount of produce for the subsequent years, the result, according to my. calculation, would be, that but a very small balance, consi. *323 derably less than the complainant’s demand, would be left in favor of Freer’s estate.
Htjnt, for the motion.
Finley, and Petigru, contra.
I may observe here, that, as I understand the equity of the case, it is immaterial what the balance may be in favor of Blacklock’s estate. If there were nothing due, on either side, the complainant’s equity would still exist against the estate of Freer. He comes to make the party directly liable, who would be liable in the last resort. His right at law was against Blacklock, and if he had received the amount, Blacklock might have had recourse to the estate of Freer, although there was nothing due him, on any other score. If Blacklock were in arrear to the estate of Freer, to the amount of complainant’s demand, then, to be sure, he could recover nothing, though he had paid the demand. The complainant’s equity is, to be put in the situation, in which Blacklock would stand, if he had paid the demand ; and if he had paid it, he might recover any balance that is now due to him, and that amount besides.
This view of the subject, furnishes an answer tó a point made at the hearing,, It was, whether any balance due to the estate of Blacklock, from the estate of Freer, is not assets, and liable to the judgment creditors of Blacklock. Any balance now due, is certainly assets ; but that balance will not be diminished, by what the complainant is to recover in this case. If Blacklock had paid the complainant’s demand, the balance, whatever it is, would have been increased by so much. The complainant’s demand, was, at law, against Blacklock; in equity, it is against the estate of Freer: but an equitable debt to Henshaw, is not assets of. the estate of Black-lock.
It is ordered, and decreed, that the administrator, de bonis non, of Charles Freer, pay to the complainant, the amount due him, for services rendered by him, as an overseer, to the estate of the said Charles Freer; and, that the costs of suit, be paid out of the said estate.
From this decree, the defendant, John H. Wilson, appealed; and, at the present term, moved that it might be reversed.
O’Neall, J.
Per Curiam. This Court concurs, unanimously, in the views taken by the Chancellor, of this case; and, it is, therefore, ordered, that his decree be affirmed.

Decree affirmed.